UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 13-24503-CIV-MOORE/MCALILEY

UNITED STATES OF AMERICA and the
STATE OF FLORIDA, *ex rel.*
THEODORE A. SCHIFF, M.D.,

   Plaintiffs,

vs.

GARY L. MARDER, D.O.; ALLERGY,
DERMATOLOGY & SKIN CANCER
CENTER, INC., a Florida corporation,
ROBERT I. KENDALL, M.D., and
KENDALL MEDICAL LABORATORY,
INC.*,* a Florida corporation,

   Defendants.
_____/

## DEFENDANTS ALLERGY, DERMATOLOGY & SKIN CANCER CENTER, INC. AND GARY MARDER, D.O.'S RENEWED MOTION TO STAY DISCOVERY AND REQUEST FOR ORAL ARGUMENT

  Defendants Allergy, Dermatology & Skin Cancer Center, Inc. and Gary Marder, D.O., sued in his individual capacity (collectively "Defendants" or "Dr. Marder") hereby respectfully move this Court to immediately stay further discovery in this matter.  Additionally, pursuant to S.D. Fla. L.R. 7.1(b)(2), Defendants respectfully request that the Court schedule oral argument on this motion to stay.  Although this Court previously denied Defendants' motion to stay, [*see* ECF No. 81], the circumstances have since changed significantly.  As demonstrated below, the government's conduct during a recent deposition in this case has exposed, in bold relief:

      (a)      the government is exploiting its purportedly "parallel" criminal investigation to gain an unfair advantage in this civil case and obtain discovery that it would not otherwise be entitled to under the law;

      (b)      the government is using this purportedly "parallel" civil case as a vehicle to unfairly expand its criminal investigative powers; and, as a result,

      (c)      the government has improperly *merged* its civil and criminal investigations.

Allowing the government to continue exploiting these circumstances is wholly inconsistent with due process and fundamental fairness. Accordingly, this Court should immediately enter an order staying further discovery in this case.

**I.    The government is exploiting its "parallel" criminal investigation to gain an unfair advantage in this civil case and obtain discovery that it would not otherwise be entitled to under the law and rules**

Imposition of a stay is warranted because the government is using and disclosing criminal investigation materials, including documents secretly compelled by the grand jury and pursuant to search warrants executed at Dr. Marder's clinics, to gain an unfair advantage in this civil case.

Rule 6(e), Fed. R. Crim. P. governs the disclosure of matters occurring before a grand jury. *See United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983) (explaining the "long established policy that maintains the secrecy of the grand jury proceedings in the federal courts") (citation omitted). Under the Rule, disclosure is only permitted in certain limited contexts, none of which are present here. Notwithstanding, during the recent deposition of Elizabeth Modica Bragg, documents compelled pursuant to grand jury subpoenas were disclosed to the non-party deponent. So were documents seized via search warrant. And, the deponent was questioned about the purportedly "confidential" documents at the direction of the case agents who are conducting the criminal

{36030659;1}

2

investigation. Without its special tools reserved exclusively for use in criminal investigations, the government would not have been able to confront the witness with these documents, leaving Marder at a significant and unfair disadvantage. *See Sells Engineering,* 463 U.S. at 433 (explaining that "use of grand jury materials by government agencies in civil or administrative settings threatens to subvert the limitations applied outside the grand jury context on the Government's powers of discovery and investigation").

Although the courts have authorized certain "parallel" investigations, the government's conduct here case clearly falls far outside the bounds of any such authorization. "To be parallel, by definition, the separate investigations should be like the side-by-side train tracks that never intersect." *United States v. Scrushy*, 366 F.Supp.2d 1134, 1139 (N.D. Ala. 2005). Those are not the circumstances here.

Questioning a witness about documents compelled by grand jury subpoena is clearly not reflective of "side-by side" investigations that "never intersect." To the contrary, such conduct shows that the government is improperly exploiting each of the two proceedings and their associated investigative tools for improper purposes and in inappropriate ways. *See, e.g., Sells Engineering,* 463 U.S. at 442 ("Congress was strongly concerned with assuring that prosecutors would not be free to turn over grand jury materials to others in the Government for civil uses without court supervision, and that statutory limits on civil discovery not be subverted—concerns that apply to civil use by attorneys within the Justice Department as fully as to similar use by persons in other government agencies.").

The real consequences of the government's actions are that the Defendants are being: (1) denied rights they would be entitled to in any criminal action, *e.g.*, the filing of a motion to

suppress; and (2) denied certain civil discovery rights that would apply to the government's attempt to gather such evidence through the standard civil discovery process. In short, the government is utilizing its criminal investigation to avoid otherwise applicable rules and to gain an unfair advantage -- all to the detriment of Dr. Marder.

The Second Circuit case of *SEC v. Rajaratnam*, 622 F.3d 159 (2d Cir. 2010) is instructive. In *Rajaratnam*, the government, through the United States Attorney's Office ("USAO"), filed criminal charges against Rajaratnam and the Securities and Exchange Commission ("SEC") also filed a civil case against Rajaratnam. As part of the criminal case discovery, the USAO provided Rajaratnam with certain Title III wire intercepts. In the civil case, the SEC sought access to the wire intercepts in Rajaratnam's possession during civil discovery. Rajaratnam objected, but the District Court ordered their disclosure. Rajaratnam appealed.

On appeal, the Second Circuit held that the order was improper, in part, because Rajaratnam had not yet had the opportunity to move to suppress the wiretap materials in the criminal case. Thus, because Rajaratnam might conceivably win a motion to suppress in the criminal case, use and disclosure of the potentially suppressible evidence in the civil case would present issues related to what effect, if any, the disclosure had on the parties in the civil case. *Rajaratnam*, 622 F.3d at 185-86. As the court explained, "if the wiretaps are found to have been illegal, ascertaining the effect of the wiretaps on witnesses and attorneys who might have been 'tainted' by any unlawfully intercepted Title III materials would be extremely difficult." *Rajaratnam*, 622 F.3d at 186, n.27. Accordingly, the court concluded that the evidence should not have been ordered disclosed.

While not exactly on all fours with *Rajaratnam*, the issues in the instant case raise the same concerns. ***First***, the government's civil trial team is using evidence that may at some time be

subject to suppression. In that regard, it raises the same concerns of taint addressed in *Rajaratnam*. ***Second***, the government is forcing the defense to address evidence that it has not yet had the opportunity to address in the criminal context and has no means to address in the civil context. More specifically, in the criminal action, the parties would have the opportunity to move to suppress the materials gathered during the search warrant. In the civil context, the government could not unilaterally collect and use evidence, but would be subject to the Federal Rules of Civil Procedure with all of its attendant procedural safeguards.

      Here, however, there is no meaningful way to address the evidence collected by way of the search warrant and the government has, through execution of the search warrant, certain documents that it would not otherwise been able to obtain. Making matters worse, the Defendants have no means to challenge the government's collection or use of such documents, and the government is ignoring the secrecy requirements of Rule 6(e), Fed. R. Crim. P. to improve its litigation position in this case. All such circumstances warrant imposition of a stay.

**II.  The government is using this purportedly "parallel" civil case as a vehicle to unfairly expand its criminal investigative powers**

      A stay is also required because the government is improperly using the civil discovery process to further the criminal investigation. As indicated above, at a recent deposition noticed by the government, two of the case agents in the criminal investigation were present. Those agents were not simple observers, but actively participated in the scope, direction, and areas of inquiry.

      "In handling motions for a stay of a civil suit until the disposition of a criminal prosecution on related matters and in ruling on motions under the civil discovery procedures, a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases." *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962). "A litigant should not be allowed to make use of the

{36030659;1}

liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *Campbell*, 307 F.2d at 487. "In the proper case the trial judge should use his discretion to narrow the range of discovery." *Id.*; *see also Nowaczyk v. Matingas*, 146 F.R.D. 169 (N.D. IL. 1993) (granting protective order barring plaintiff from disclosing certain discovery evidence collected in civil case on basis that civil litigants should not use civil process to expand criminal investigative power). Finally, the inquiry is the effect of the discovery requests and not the underlying intent or reason for the request. *S.E.C. v. Mersky*, 1994 WL 22305, at *5 (E.D. Pa. January 25, 1994) (relying on *Campbell* and holding "the proper focus is not upon the discovering party's intent in seeking discovery, but rather, upon the effect of his obtaining such discovery.")  This is such a case.

In the normal course of a criminal investigation, the government would not be entitled to speak with any person that they wished.  Rather, they would have to ask for a voluntary interview.  Of course, if the person rejected the request for an interview that would be the end of the matter. Arguably, the government could serve a grand jury subpoena for testimony, but that would not create the improper circumstances currently present here. Instead, in such a situation, the case agents could not be present inside the grand jury during that process.  Thus, the agents could not direct the questions, participate in the questions asked by passing notes, determine the scope of inquiry, or propose areas to be revisited.  Moreover, the witness would have certain procedural

rights not granted in the context of a civil case. Here, however, by way of the civil deposition, the government is using civil discovery to further its criminal case.

In addition, the government, in its second set of interrogatories, seeks "all material facts," the identity of each person with personal knowledge, and the identification of all documents which support each of the defendant's affirmative defenses. The affirmative defenses include lack of intent, reliance, and no conspiracy, among other things. Of course each of these defenses would be available in the criminal case as well. Thus, by way of their civil discovery request, the government is essentially seeking a road map to the defendants' case and the defense in the criminal investigation. Of course, in a criminal investigation, an individual is not required to provide anything close to what is being demanded by the government through civil discovery. And, "[a] litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery . . . ." *Campbell,* 307 F.2d at 487. For this additional reason, the motion to stay should be granted.

### III.    The denial of Dr. Marder's Motion for Protective Order also warrants imposition of a stay

Dr. Marder previously filed a motion to stay this matter based on the unenviable choice of being required to choose to assert the Fifth Amendment and suffer the adverse consequence, or not assert the Fifth Amendment and incriminate himself. [*See* ECF No. 70.] That motion was denied by the Court. [*See* ECF No. 81.] In denying the motion, the Court found that "Defendants' Fifth Amendment concerns can be adequately addressed through well-tailored protective orders and conditions to limit and/or direct discovery which might cause potential interference with the ongoing criminal investigation." *Id.* Thereafter, Marder filed a motion for a protective order

seeking to protect certain defendants from certain requested discovery, [*see* ECF No. 87], but that motion was also denied, [*see* ECF No. 98].

The denial of the motion for protective order makes the Hobbesian choice that Marder must make real. As the Court noted, in its denial of the first motion for a stay, protective orders and limitations of discovery would adequately address such concerns. At the present, however, because of the denial of the motion for a protective order, those measures simply will not address Dr. Marder's Fifth Amendment concerns. Accordingly, a stay of the civil discovery is warranted for this reason as well.

**IV.     This Court should schedule oral argument on this motion**

Defendants submit that oral argument will assist this Court in determining the merits of this motion. A hearing on this motion will be beneficial to the Court as it will provide the parties an opportunity to address all pertinent legal arguments as to Defendants' significant concerns affecting important constitutional rights. Oral argument was not requested in the original motion to stay, thus this Court has not yet had the opportunity to ask questions and obtain further detail regarding Defendants' arguments. Further, there are new facts and circumstances in this case warranting a stay of discovery which should also be addressed at oral argument.

**V.     Conference certification**

In accordance with Local Rule 7.1(a)(3), undersigned counsel has conferred with counsel for Co-Defendants, who agrees with this renewed motion for stay of discovery; and was unable to reach counsel for the government to confer.

## **CONCLUSION**

For all these reasons, Defendants respectfully request that a stay of discovery be granted.

Dated: August 24, 2015                                   Respectfully submitted,

                                                  **AKERMAN LLP**
*Attorneys for Defendants*
*Gary Marder, D.O. and Allergy,*
*Dermatology & Skin Cancer Center, Inc.*
One S.E. Third Avenue, Suite 2500
Miami, Florida 33131
305-374-5600
305-374-5095 fax


By:   /s/ Jacqueline Arango
          Jacqueline Arango
          Florida Bar No. 664162
          jacqueline.arango@akerman.com

{36030659;1}

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2015, I electronically filed the foregoing with the Clerk of Court, using CM/ECF.  I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF, or via other means if required.

By:    /s/ Jacqueline Arango<br>
Jacqueline Arango