UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:13-cv-24503-KMM

UNITED STATES OF AMERICA and the
STATE OF FLORIDA, *ex rel.*
THEODORE A. SCHIFF, M.D.,

      Plaintiffs,

v.

GARY L. MARDER, D.O., ALLERGY,
DERMATOLOGY & SKIN CANCER
CENTER, INC., a Florida corporation,
ROBERT I. KENDALL, M.D., and
KENDALL MEDICAL LABORATORY,
INC.*,* a Florida corporation,

      Defendants.
_____/

## OMNIBUS ORDER

THIS CAUSE came before the Court upon a sua sponte review of the record. Recently, the Court entered an omnibus order that, *inter alia*, denied Defendants Allergy, Dermatology & Skin Cancer Center, Inc. ("ADSCC") and Gary Marder, D.O.'s ("Dr. Marder") (collectively, the "Marder Defendants") Motion for Extension of Time to Conduct Discovery and further ordered the parties to complete the Court-mandated mediation process. *See United States v. Marder*, No. 1:13-CV-24503-KMM, 2016 WL 1614405, at *1 (S.D. Fla. Apr. 22, 2016). The Court's purpose in issuing the order was to provide clarity to the parties, preserve judicial resources, and to ensure that this case continued on a path towards a "just, speedy, and inexpensive determination" that is consistent with the Federal Rules of Civil Procedure. *Id.* (quoting Fed. R. Civ. P. 1). However, the harrowing path this case is traveling down has forced the Court into the position of

having to issue yet another omnibus order to prevent this cause of action from foundering into a procedural morass. Accordingly, the Court enters the following order.

I.   **Background**

On January 25, 2015, the Court entered a scheduling order setting the case for trial during the two-week trial period beginning January 25, 2016, with a discovery cut-off—both factual and expert—of October 16, 2015. *See* (ECF No. 57) ("All discovery shall be completed one hundred (100) days prior to the date of trial. The failure to engage in discovery pending settlement negotiations shall not be grounds for continuance of the trial date."). Over the course of the next several months, the Court took the following actions: (1) Denied Defendants' motions to dismiss (ECF No. 75) on May 14, 2015; (2) denied Defendants' motions for stay of civil case (ECF No. 81) on May 28, 2015; and (3) denied Defendants' motions for stay of discovery (ECF No. 116) on September 25, 2015. Shortly after the Court entered the last order—and in the waning moments of discovery—the parties filed on October 16, 2015, a Joint Motion to Continue Trial and Reset Pretrial Deadlines (ECF No. 122). On October 23, 2015, the Court issued an order (ECF No. 123) which granted, in part, the parties' joint motion.

The Court based its ruling to modify the scheduling order and continue the trial date partially on the parties' request for additional time to complete expert discovery. *See* (ECF No. 123). The Court found "good cause" existed to warrant modification of scheduling order where various "issues have triggered the [parties'] need for additional time for expert discovery, both as to existing experts and possible new experts." *Id.* Subsequently, the Court set a new trial date for the two-week trial period beginning June 13, 2016, with a discovery deadline of March 5, 2016.[1] *Id.* The Court also set a deadline of March 25, 2016 for filing "any and all pretrial

---

[1] The modified scheduling order did not grant the parties' proposed expert witness deadlines. With respect to the timing of expert disclosures—and absent a court order—the disclosures must

2

motions, including motions for summary judgment, Daubert motions, and motions in limine." *Id.* Additionally, the Court instructed the parties that "future requests for modification of the Court's Scheduling Order will be looked upon with the utmost scrutiny." *Id.* With this framework in mind, the Court now turns to the various issues pending before it.

### A.     The Government's Motion to Strike Experts and Expert Reports

On March 2, 2016, Plaintiff, the United States of America (the "Government") filed a motion to strike expert reports and exclude the testimony of the experts designated by the Marder Defendants. *See* Pl.'s Mot. (ECF No. 132). In support of the motion, the Government asserted that it had timely served—on February 3, 2016—deposition notices for the two experts retained by the Marder Defendants. Expert Lorraine Molinari ("Molinari") was noticed for February 23, 2016 and expert David Goldberg, M.D. ("Dr. Goldberg") was noticed for February 25, 2016. *Id.* at 2.

On February 18, 2016, counsel for the Marder Defendants ("Marder's Counsel") requested that both expert depositions be deferred until the week beginning February 29, 2016, the final week of discovery. After receiving a proposed date from Marder's Counsel, the Government re-noticed Molinari's deposition for the afternoon of March 1, 2016. However, the day before the deposition was to be taken, Marder's Counsel notified the Government that Molinari had a medical condition and would not be appearing for her scheduled deposition. Consequently, the parties agreed to move Molinari's deposition to March 8, 2016, the next date

---

be made: "(i) at least 90 days before the date set for trial or for the case to be ready for trial; or (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D).

3

on which the witness was available but after the discovery cut-off.[2]  Regarding Dr. Goldberg's deposition, Marder's Counsel did not provide a tentative date to the Government as requested.  Thus, the Government unilaterally re-noticed Goldberg's deposition from the original date of February 25 to March 4, 2016, one day before discovery was scheduled to close.

Beyond the scheduling issues surrounding the depositions of the Marder Defendants' experts, the Government also moves to strike Dr. Goldberg's Expert Report for failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B).  *See* (ECF No. 132).  Specifically, the Government contends that the report is materially deficient in three respects: (1) The report does not identify the materials considered; (2) the report fails to include a list of all other cases, during the previous four years, in which Dr. Goldberg testified as an expert; and (3) there is no statement of compensation.

In response, the Marder Defendants assert that the Government's motion to strike is "nothing more than a thinly-veiled attempt to distract this Court from the [G]overnment's failure to timely pursue and produce discovery" and that the "draconian sanction" of striking the Marder Defendants' expert witnesses is unwarranted.  *See* Defs.' Resp. (ECF No. 141).  The Marder Defendants instead contend that they timely disclosed their expert witnesses in accordance with the Court's scheduling order and applicable rules.  *Id.* at 2.  The Marder Defendants also claim that this matter was unnecessarily complicated by "the [G]overnments sluggish production of

---

[2]  An agreement to conduct a deposition after a court ordered discovery deadline expressly violates the Local Rules.  *See* S.D. Fla. L.R. 26.1(a) ("Parties may stipulate in writing to modify any practice or procedure governing discovery . . . unless doing so would violate a Court-ordered deadline, obligation, or restriction.  Further, Local Rule 26.1(d) states that all "depositions must be scheduled to occur, and written discovery requests and subpoenas seeking the production of documents must be served in sufficient time that the response is due *on or before the discovery cutoff date*.  Failure by the party seeking discovery to comply with this paragraph obviates the need to respond or object to the discovery, appear at the deposition, or move for a protective order."  S.D. Fla. L.R. 26.1(d) (emphasis added).  Accordingly, the Court will not consider any deposition testimony that was conducted after the March 5, 2016 deadline.

discovery." *Id.* at 4. Lastly, the Marder Defendants argue that even if the expert report of Dr. Goldberg was "supposedly incomplete, there was clearly no prejudice to the [G]overnment."[3] *Id.* ("Likewise, any delay in providing additional information was inadvertent and certainly no worse than the [G]overnment's failure to respond to the defense's expert witnesses . . .")(internal quotation marks omitted).

Contrary to the Marder Defendants' claims, this is not how civil litigation works.[4] Federal Rule of Civil Procedure 26(a)(2) requires each party to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Rule 26(a)(2)(B) requires that expert disclosures "be accompanied by a written report—prepared by and signed by the witness—if the witness is one retained . . . to provide expert testimony in the case. . . ." Fed. R. Civ. P. 26(a)(2). The report must contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the

---

[3] The Marder Defendants cannot simply swat away the sting of prejudice caused by their maladroit management of the discovery process through such conclusory claims. Further, the schoolyard finger pointing displayed here runs contrary to the widely known maxim that "people in glass houses should not throw stones."

[4] It is the Court's practice to leave discovery largely to the parties, unless certain circumstances, which occur infrequently, dictate the need for judicial intervention. This is an issue the Court already covered in its previous omnibus Order that denied the Marder Defendants' March 3, 2016 request for extension of time to complete discovery. *See* Order (ECF No. 196) (Denying request to extend discovery after Court had "provided the parties approximately four and a half extra months to complete th[e] process in a case that embarked on its Homeric path approximately eighteen (18) months ago"). While the Court embraces its role as an active arbiter in the case management process, it bemoans the suggestion that the Court should serve as a de facto babysitter watching over every possible discovery dispute between the parties. *See Selectica, Inc. v. Novatus, Inc*., No. 6:13-CV-1708-ORL-36, 2014 WL 1930426, at *2 (M.D. Fla. May 14, 2014) ("Discovery is intended to be extrajudicial and self-executing. It should require at most, infrequent court involvement."); *Teledyne Instruments, Inc. v. Cairns*, No. 6:12-CV-854-ORL-28, 2013 WL 5781274, at *4 (M.D. Fla. Oct. 25, 2013) ("Discovery in federal court is a self-managed process.") (citation omitted).

>witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  Additionally, a party who has made a Rule 26(a) disclosure has an affirmative duty to "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

The expert disclosure requirements under Rule 26(a)(2)(B) are "intended to provide opposing parties reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses." *OFS Fitel, LLC v. Epstein, Becker & Green*, P.C., 549 F.3d 1344, 1362 (11th Cir. 2008) (quoting *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008).  "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *Reese*, 527 F.3d at 1266 (internal quotation omitted).

A failure to comply with Rule 26 supports the imposition of sanctions.  Federal Rule of Civil Procedure 37(c)(1) states that a party who fails to provide expert disclosures under Rule 26(a)(2) "is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x. 821, 824 (11th Cir. 2009) (citation omitted).

In determining whether the failure to sufficiently disclose an expert witness is substantially justified or harmless, courts are guided by several factors, including:

6

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*United States v. Twenty-Nine Pre-Columbian & Colonial Artifacts from Peru*, No. 13-21697-CIV, 2015 WL 457860, at *2 (S.D. Fla. Feb. 3, 2015) (quotation omitted).

To be charitable, the Court finds the arguments offered on behalf of the Marder Defendants unavailing, vacuous, and borderline malpractice.[5] In this case, the Court permitted the parties' respective counsels wide latitude by expanding the time allowed to disclose expert reports and to conduct any related depositions. In fact, the Court extended the discovery deadline by approximately four and a half months to accommodate the parties' asserted need to engage in *further* expert discovery. The Court took this action on the belief that the parties met and conferred meaningfully and had estimated dates that were workable and feasible based on their schedules, their experts' schedules, and counsel's knowledge about the nature and complexity of the issues in the case.[6]

Nevertheless, the Marder Defendants have failed to timely and faithfully comply with these extended deadlines and only provided a cursory expert report—numbering three pages—from Dr. Goldberg that fails to meet the requirements of Rule 26. This failure unquestionably undermines the Government's ability to prepare for trial. However, the fact the Marder Defendants' expert report is incomplete does not warrant the re-opening of discovery at this late juncture. *See Dyett v. North Broward Hosp. District*, 2004 WL 53220630, * 1 (S.D. Fla. Jan. 1,

---

[5] Notably, the Marder Defendants fail to argue that their incomplete disclosure of Dr. Goldberg's expert report was substantially justified or harmless. Because they failed to address this issue, the Court declines to find either substantial justification or harmlessness.

[6] The parties requested a deadline of April 8, 2016 in their joint motion to complete expert discovery. Given the requested six month continuance, the Court determined such a deadline would leave little room for consideration of dispositive motions for a June trial date.

2004) ("Expert reports must not be sketchy, vague or preliminary in nature and the disclosure must not be used as a means to extend a discovery deadline.").

Frankly, the Marder Defendants can hardly cry foul given that they did not attempt to move the needle on discovery from October 23, 2015—when the Court granted the parties' joint motion for extension of time—until mid-February, just two weeks before the deadline. The record is utterly devoid of any attempts to seek guidance or relief from this Court, or the assigned magistrate, regarding any red flags in the discovery process. A party cannot just stand idly by and wait to take depositions while a discovery dispute drags on without taking affirmative action to resolve the dispute well in advance of the deadlines, regardless of who is at fault for the delay. In sum, the Marder Defendants' inability to procure this discovery is a crisis of their own making. *See e.g.*, *S.O.S. Res. Servs., Inc. v. Bowers*, No. 14CIV22789COOKETORRE, 2015 WL 6735540, at *3 (S.D. Fla. Nov. 4, 2015) ("A court can only assist those parties who help themselves, and here, the record indisputably demonstrates that Plaintiff was its own worst enemy.").

Over thirty years ago, Magistrate Judge Brazil cogently framed the sort of problems that arise from lingering discovery disputes:

> The discovery system depends absolutely on good faith and common sense from counsel. The courts, sorely pressed by demands to try cases promptly and to rule thoughtfully on potentially case dispositive motions, simply do not have the resources to police closely the operation of the discovery process. The whole system of [c]ivil adjudication would be ground to a virtual halt if the courts were forced to intervene in even a modest percentage of discovery transactions. That fact should impose on counsel an acute sense of responsibility about how they handle discovery matters. They should strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests.

*In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985).

Discovery is not meant to serve as a "game of blind man's bluff" but rather as a process to make trial "a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). This is best accomplished when counsel approach discovery with an eye towards civility and cooperation rather than resulting to behavior that stonewalls and stultifies the process. This point has apparently been lost on Marder's Counsel.[7] This case is nearly two years old now and currently scheduled for trial in less than a month. It is time to step into the starter's blocks and proceed with the trial contest. It is not the Court's fault that the parties failed to engage in effective discovery.[8]

**B.     Marder Defendants' Motion for Extension of Time to File Daubert Motions**

On March 25, 2016—at 11:56 PM on the deadline for filing all pretrial motions—the Marder Defendants filed a motion for extension of time to file *Daubert* motions. *See* Defs.' Mot. (ECF No. 151). Specifically, the Marder Defendants requested an extension of time to challenge

---

[7] In referring to Marder's Counsel, the Court is mindful that a team of lawyers—composed of multiple associates and partners—is often assembled to represent a client in a complex civil litigation matter and does not intend to focus its attention solely on any one attorney's possible gaffes. Nevertheless, like any hierarchical organization, the torch of responsibility is carried by those at the top.

[8] In the Marder Defendants' Amended Statement of Material Facts (ECF No. 202), filed on the April 29, 2016—seven weeks after discovery closed and one week after the Court denied a motion for extension of time to conduct discovery—the Marder Defendants stated that they had "retained a statistician expert witness who is in the process of reviewing the [the Government's expert witness'] opinions and underlying materials and seek additional time, pursuant to Fed. R. Civ. Pro. 56(d), to present opposing expert opinions." This request, buried in an evidentiary objection to a material fact offered by the Government is procedurally improper and fails to comport with Rule 56(d)'s requirements. "Federal Rule of Civil Procedure 56(d) authorizes a party opposing a summary judgment motion to file a motion for additional time to conduct discovery so that it may appropriately oppose the motion." *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-22539-CIV, 2014 WL 7272974, at *4 (S.D. Fla. Dec. 18, 2014) (noting that a party's desire for more discovery is "insufficient to preclude summary judgment or to defer a ruling under Rule 56(d)"). Therefore, the statistician expert witness testimony offered by the Marder Defendants (ECF No. 222) is stricken as untimely.

9

the Government's expert witnesses until after the Marder Defendants had an opportunity to depose the identified experts.[9]

According to the Marder Defendants, the Government served a voluminous expert report from its coding expert on February 18, 2016. *Id.* at 2. Shortly thereafter, the Marder Defendants received two more lengthy expert reports from the Government. *Id.* On these grounds, the Marder Defendants contend that good cause exists for yet another modification of the scheduling order. *Id.* at 4 ( arguing that "[t]he interests of maintaining fairness in this proceeding, ensuring due process for all parties and preserving the right to the determination of this case on its merits all support a finding of good cause meriting the granting of the requested relief.").

The Government responds that the Marder Defendants' latest motion is "an attempt to distract the Court from their own lack of diligence." *See* Pl.'s Response at 1 (ECF No. 177). The Government reiterates that one of the key reasons the parties' jointly sought a continuance in October was the existence of various issues related to expert witnesses. *Id.* at 2. Moreover, the Government contends that it timely commenced the turnover of its expert reports in accordance with the requirements of Rule 26. Lastly, the Government argues that it would be severely prejudiced if the Court granted the Marder Defendants' request for extension of time to file *Daubert* motions. *Id.* at 3 (noting that the Government "has filed a comprehensive motion for summary judgment providing many details of its approach to this case" and that the Marder Defendants "would now have an unfair advantage" if the Court granted the requested relief).

Among the tools that district courts employ in managing their caseloads is the Rule 16(b) scheduling order, "which is integral to the Court's duty as coxswain of the litigation." *Ray v. Spirit Airlines, Inc.*, No. 12-61528-CIV, 2012 WL 5471793, at \*2 (S.D. Fla. Nov. 9, 2012); *see*

---

[9] The Court has made it abundantly clear in its previous omnibus order as well as in this Order that it will not allow the discovery process to drag on *ad infinitum.* There is no reason for the Court to gild the lily here, for the Court can resolve this motion on alternative grounds.

*also Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) ("[S]cheduling orders are at the heart of case management. If they can be disregarded without a specific showing of good cause, their utility will be severely impaired."). Thus, Rule 16 requires a court to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Such orders "control[] the course of the action unless the court modifies it," Fed. R. Civ. P. 16(d), and "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause requires a showing that the "schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir.1998) (quoting Fed. R. Civ. P. 16 Advisory Committee's Note).

Moreover, courts have long recognized that a scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985); *see also Ameritox, Ltd. v. Aegis Servs. Corp.*, No. 07-80498-CIV-MARRA, 2008 WL 2705435, at *1 (S.D. Fla. July 9, 2008). As the Ninth Circuit stated, "[t]he district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of [plaintiff's] case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

As the Court previously noted, the October 23 scheduling order "extending the discovery period through March 5, 2016 provided the parties approximately four and a half extra months to complete this process in a case that embarked on its Homeric path approximately eighteen (18) months ago." *Marder*, No. 1:13-CV-24503-KMM, 2016 WL 1614405, at *5. Marder's Counsel's penchant for repeated requests for extensions of time—grounded in one excuse after

11

another—must be brought to a halt in order for the Court to move the case forward and effectively manage its docket.[10] The Marder Defendants have neither demonstrated diligence in meeting this Court's deadlines nor explained why the requested relief was not sought shortly after the close of discovery, rather than near the stroke of midnight on the deadline for filing summary judgment motions. In essence, the relief the Marder Defendants are seeking only serves to delay the resolution of the timely filed summary judgment motion and unfairly prejudices the Government.

The absence of proper justification for the motion for extension of time and the havoc that it would wreak on the schedule if granted are of particular concern to the Court because this is unfortunately not an isolated occurrence, but instead appears to be the Marder Defendants' pattern and practice. To allow an amendment of a scheduling order on such a basis would render the good cause standard useless. Additionally, foreseeable scheduling conflicts—that arise from parties waiting to the last minute to conduct "vital" witness depositions—cannot justify the extension of the deadlines. Quite simply, the Marder Defendants' langorous approach to case management does not warrant a modification of the scheduling order.

    **C.**    <u>**Marder Defendants' Untimely Motions To Strike**</u>

On April 19, 2016, the Marder Defendants filed motions to: (1) strike the declaration of John Jacobs (ECF No. 148-3) filed in support of the Government's motion for summary judgment (ECF No. 180); and (2) strike the declaration of Michael Petron filed in support of the Government's motion for summary judgment (ECF No. 150-1), strike the Expert Report of Michael Petron, and exclude Petron's testimony (ECF No. 181).

The Marder Defendants' motions to strike suffer from three fatal flaws in that they are untimely, procedurally improper, and fail to comply with Local Rule 7.1. First—on the issue of

---

[10] The Marder Defendants were anything but "busy bees" during the extended discovery period.

timeliness—the deadline for filing pretrial motions was March 25, 2016 and no subsequent extensions of time have been granted. Second, Federal Rule of Civil Procedure 12(f) is applicable to pleadings only. *See Keira v. Berry*, No. 13-60990-SCOLA, 2013 WL 5416900, at *1 (S.D. Fla. Sept. 26, 2013) ("[N]umerous courts in the Eleventh Circuit, and elsewhere, have held that a motion to strike filings that are not pleadings (as defined by Rule 7(a)) is improper."); *Polite v. Dougherty Cty. Sch. Sys.*, 314 F. App'x 180, 184 (11th Cir. 2008) ("But motions to strike are only appropriately addressed towards matters contained in the pleadings."); *but see Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 112–13 (11th Cir. 2010) (affirming district court's partial grant of motion to strike unauthenticated evidence attached to summary judgment response).

Finally, Local Rule 7.1(a)(3) requires movant's counsel to "confer (orally or in writing) with all parties before filing a motion "in a good faith effort to resolve by agreement the issues to be raised in the motion." S.D. Fla. L.R. 7.1(a)(3). The Rule also requires the movant to provide a written certification that a conferral occurred or that reasonable efforts to confer were made but the movant was unable to have the required conferral. *Id.* "Failure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion and impose on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." Both motions (ECF Nos. 180 and 181) lack the requisite 7.1(a)(3) certification and thus denying the motions is an appropriate sanction.

        D.     <u>**Other Motions That Require Resolution**</u>

In striking the Marder Defendants' previous response to the Government's motion for summary judgment—for failure to comply with Local Rule 56.1—the Court granted permission

13

for the Marder Defendants to "refile a Response and Statement of Material Facts that comply with the Federal Rules of Civil Procedure and the Local Rules of this District no later than April 29, 2016." *See Marder*, No. 1:13-CV-24503-KMM, 2016 WL 1614405, at *6. On April 29, 2016, the Marder Defendants' Statement of Material Facts was timely filed.[11] *See* (ECF No. 202). However, the actual response to the summary judgment motion was filed one date later after the Government's counsel informed the Marder Defendants of this perplexing omission.[12] *See* (ECF No. 204).

Under Federal Rule of Civil Procedure 6(b), district courts have discretion to grant or deny a party's request for an extension of time "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The Supreme Court has concluded that the determination of excusable neglect is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Factors courts consider in determining "excusable neglect" include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.*; *see also Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355 (11th Cir. 2009).

---

[11] Whether the Court will afford yet another opportunity to the Marder Defendants to submit a coherent statement of material facts—given the onslaught of evidentiary objections contained in the one the Marder Defendants have currently submitted—will be resolved in a forthcoming order. *See Todd v. Stryker Corp.*, No. 2:09-CV-01509-JAM, 2012 WL 2922727, at *2 (E.D. Cal. May 1, 2012) ("An avalanche of paper, submitted in the hope that somewhere buried in the bulk of documentation there may be a genuine disputed fact issue lurking, whether done to defeat the motion itself, or to hedge one's bet on appellate review, is not helpful to the Court.").

[12] Given that "[s]ummary judgment is such a lethal weapon" that can "depriv[e] a litigant of a trial on the issue," it is mortifying that the Marder Defendants would untimely file their response to summary judgment in a case where the alleged damages are estimated in the tens of millions of dollars. *Tippens v. Celotex Corp.*, 805 F.2d 949, 952-53 (11th Cir. 1986).

The Eleventh Circuit recognizes that attorney oversight or miscommunication—such as that exhibited by Marder's Counsel—clearly falls within the parameters of excusable neglect. *See Walter v. Blue Cross & Blue Shield United*, 181 F.3d 1198, 1202 (11th Cir. 1998) (characterizing a secretary's failure to record a filing deadline as excusable neglect); *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996) (finding excusable neglect where miscommunication between associate and lead attorney resulted in delayed filing). While the equities favor allowing the Marder Defendants to file their response, the Court implores Marder's Counsel to consider the following:

> In the courts, there is room for only so much lenity.  The district court must consider the equities not only to plaintiff and his counsel, but also to the opposing parties and counsel, as well as to the public, including those persons affected by the court's increasingly crowded docket.  Counsel must take responsibility for the obligations to which he committed and get the work done by the deadline. . . . Deadlines are not meant to be aspirational; counsel must not treat the goodwill of the court as a sign that, as long as counsel tries to act, he has carte blanche permission to perform when he desires.  A district court must be able to exercise its managerial power to maintain control over its docket.

*Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004).

Accordingly, the Marder Defendants' Motion for Extension of Time to File Response to Summary Judgment (ECF No. 203) is GRANTED *nunc pro tunc*.

### E. Sua Sponte Continuance of Trial Date

The Marder Defendants' repeated procedural missteps and befuddling case management strategy has forced the Court to sashay from one Local Rule violation to another and indubitably served to delay the Court's consideration and disposition of the Government's summary judgment motion filed on March 25, 2016.  The Marder Defendants initial non-compliant response was timely filed—after an extension of time was granted—on April 19, 2016.  *See* (ECF No. 187).  The Court's first attempt at remedying the effects of the inadequate filings was

to exhibit leniency by allowing the Marder Defendants to refile a response to summary judgment by April 29, 2016. The Court recognized the practical effect of this extension and granted the Government an extension of time to reply in support of its summary judgment motion through May 6, 2016. With pretrial conference currently scheduled for May 31, 2016 and trial looming two weeks later, the Court will in essence have just shy of three weeks to resolve the Government's motion.

To fairly and efficiently resolve the Government's summary judgment motion, and to preclude the need for unnecessary expenditure of time and assets by the parties, the Court finds it appropriate to amend the following trial dates: Final Pretrial Conference is now scheduled for June 28, 2016; Calendar Call is now scheduled for July 7, 2016; and Trial is now scheduled for the two-week trial period beginning July 11, 2016.

## II.     CONCLUSION

Judge Goodman has quoted Dr. Samuel Johnson favorably in the past for his lucid proposition that "[k]nowledge is of two kinds. We know a subject ourselves, or we know where we can find information on it." *Procaps S.A. v. Patheon Inc*., No. 12-24356-CIV, 2015 WL 1880346, at *1 (S.D. Fla. Apr. 24, 2015). Many of the Marder Defendants' self-inflicted wounds could have been avoided by cracking open a copy of the Local Rules of the Southern District of Florida and the Federal Rules of Civil Procedure. Throughout this order, the Court has endeavored to guide the case back towards a path that will ultimately lead to a fair and efficient resolution. Only time will tell if the course has been corrected.

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that:

1.      The Government's Motion to Strike (ECF No. 132) is GRANTED.

2. The Marder Defendants' Motion for Extension of Time to File Daubert Motions (ECF No. 133) is DENIED.

3. The Marder Defendants' Motions to Strike (ECF Nos. 180, 181) are DENIED.

4. The Marder Defendants' Motion for Extension of Time to File Response to Summary Judgment (ECF No. 203) is GRANTED *nunc pro tunc*.

5. The Marder Defendants' Notice of Filing Brief Vita and Affidavit of Victor Pestien, PH.D. (ECF No. 222) is hereby STRICKEN.

6. Counsel for the Marder Defendants is cautioned that future non-compliance with the Local Rules of the Southern District of Florida and the Federal Rules of Civil Procedure will result in substantial monetary sanctions.

7. Trial Calendar is amended as follows: Final Pretrial Conference is scheduled for June 28, 2016; Calendar Call is scheduled for July 7, 2016; and Trial is scheduled for the two-week trial period beginning July 11, 2016.

8. All other deadlines not expressly dealt with in this Order are otherwise unaffected.

DONE AND ORDERED in Chambers at Miami, Florida, this  18th   day of May, 2016.

_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:	All counsel of record