UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 13-24503-CIV-MOORE/MCALILEY

UNITED STATES OF AMERICA
and the STATE OF FLORIDA, *ex rel.*
THEODORE A. SCHIFF, M.D.,

        Plaintiffs,

vs.

GARY L. MARDER, D.O.; et al.

        Defendants.

**UNITED STATES' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ADDRESSING THE ISSUES RAISED IN UNIVERSAL HEALTH SERVICES**

### I.    Introduction

On July 8, 2016 (ECF 242)[1], the Court instructed the Government to file a supplemental brief in support of its motion for summary judgment (*"MSJ"*, ECF 146) addressing the *"potential effects"* of the Supreme Court's decision in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. ---, 136 S. Ct. 1989 (June 16, 2016). As set forth below, the *Escobar* decision does not alter the conclusion that this Court should grant the government's motion for summary judgment.

### II.    The Supreme Court's Decision in *Escobar*

In *Escobar*, the Supreme Court unanimously held that liability under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, could be based upon an implied false certification theory. "When, as here, a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services

---

[1] The Court's order was dated July 7, 2016, but was entered in the FLSD Docket system on July 8, 2016.

provided." 136 S. Ct. at 1999.  The Court expressly declined to address whether implied false certification liability can exist in other situations, even absent a misleading partial disclosure or half-truth.  *Id.* at 2000 (*"*We need not resolve whether all claims for payment implicitly represent that the billing party is legally entitled to payment.*"*).  The Court also affirmed that the FCA materiality standard is the *"*natural tendency,*"* and clarified the manner in which that test should be applied.  *Id. at* 1995, 2002.

### A. Misleading Half Truths or Omissions in the Claims for Payment Are False or Fraudulent Claims Under the FCA

The *Escobar* defendants provided federally funded mental health services using unqualified and unlicensed counselors. Their claims for payment consisted, in pertinent part, of valid Medicaid billing codes for the healthcare services furnished, but those claims did not disclose that those services were performed largely by unqualified and unlicensed healthcare personnel. Although nothing in the defendants' claims was *per se* false, the Court concluded that, in context, they were *"*misleading half-truths.*" Id.* at 2001. "By using payment and other codes that conveyed this information without disclosing Arbour's many violations of basic staff and licensing requirements for mental health facilities, Universal Health's claims constituted misrepresentations.*" Id.* at 2000-01.

Relying on the *"*well-settled meaning of common-law terms,*"* the Court reasoned that *"*[b]ecause common-law fraud has long encompassed certain misrepresentations by omission, 'false or fraudulent claims' include more than just claims containing express falsehoods.*" Id.at* 1999. The Court explained that the claims in *Escobar* fell *"*squarely within the rule that half-truths ... can be actionable misrepresentations.*" Id.* at 2000 and n.3 *(citing* 3 D. Dobbs, P. Hayden, & H. Bublick, LAW OF TORTS §682, pp. 702-703, and n.14 (2d ed. 2011)). The Court also explained that *"*[t]his rule recurs throughout the common law. In tort law, for example, 'if the defendant does speak, he must disclose enough to prevent his words from being misleading.' " *Id. (citing* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, PROSSER AND KEETON ON LAW OF TORTS § 106, p. 738 (5th ed. 1984)).

### B. *Escobar* Materiality Discussion

The Supreme Court also reaffirmed that the *"*term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.*" Escobar,* 136 S. Ct. at 2002 (c*iting Neder v. United States*, 527 U.S. 1, 16 (1999) (as using this definition to interpret the mail, bank, and wire fraud statutes), and *Kungys v. United*

*States*, 485 U.S. 759, 770, (1988) (same for fraudulent statements to immigration officials)). The Court explained that the focus of this inquiry is *"the effect on the likely or actual behavior of the recipient of the alleged misrepresentation."* *Id.* (citing 26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003) (Williston)). The Court further explained that this inquiry can be undertaken from either the perspective of a *"reasonable person"* or the particular defendant: a matter is material (1) if a reasonable person would attach importance to it in determining a choice of action in the transaction; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter in determining a choice of action, regardless of whether a reasonable person would do so. *Id.* at 2002-2003 (*citing* Restatement (Second) of Torts § 538, at 80)).

The Supreme Court explained that in applying this standard, the label attached to a particular rule, regulation or contract term may be relevant, but is not determinative. Thus, the Court rejected the false dichotomy invoked by some courts between a so-called condition of participation and a condition of payment: *"Section 3729(a)(1)(A) imposes liability on those who present 'false or fraudulent claims' but does not limit such claims to misrepresentations about express conditions of payment."* *Id.* at 2001 (c*iting United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1268 (D.C. Cir. 2010)); *see also Id.* at 2003 (*"*the Government's decision to expressly identify a provision as a condition of payment is relevant but not automatically dispositive*"*). Instead, the Supreme Court identified a variety of additional factors bearing on the materiality inquiry, including whether the violation is significant or *"*minor or insubstantial,*" id.* at 2003, whether the violation goes to the *"*essence of the bargain,*" id.* at 2003 n.5 (quoting *Junius Constr. Co. v. Cohen*, 257 N.Y. 393, 400 (1931)), and the actions the government took in this or other cases where the government had knowledge of similar violations, *id.* at 2003-2004. The Supreme Court in *Escobar*, therefore, makes clear that the materiality of a misrepresentation depends not on the specific label attached to the violation but rather the *capacity* of the violation to affect the government decision maker.

### III.   *Escobar* Supports a Finding of Liability

#### A.   Defendants' Claims Are "False or Fraudulent"

*Escobar* held a claim could be "false or fraudulent" under the implied false certification theory where "the claim does not merely request payment, but also makes specific representations about the goods or services provided." 136 S. Ct. at 2001. That holding does not

3

govern this case for two reasons. First, many of the claims in the instant case involve affirmative misrepresentations, not half-truths. The majority of the claims at issue in the MSJ addressed blatantly false misrepresentations regarding *services not rendered*, purported provision of services supported by *fake, cloned* documentation, and services that were "upcoded," which disguised the fact some other lower cost service was actually rendered. MSJ at p.2. Examples of these claims include those that sought payment for (a) Medical Physicist services,[2] (b) Radiation Management services[3] and (c) radiation therapy using Linac Codes.[4] Because these claims were factually false or included factual misrepresentations on their face, the question of whether they were half-truths due to the defendant's *failure to disclose* its noncompliance with a statutory, regulatory, or contractual requirement is irrelevant. *See Escobar*, 136 S. Ct. at 1999 (recognizing the difference between an implicitly false claim and "claims containing express falsehoods").

Second, to the extent the claims at issue here contain implied false certifications, they would be governed by existing Eleventh Circuit precedent that was not overruled by *Escobar*. In particular, the Supreme Court left open the possibility that a claim could be "false or fraudulent" even if it "merely request[ed] payment." 136 S. Ct. at 2000. In leaving that door open, *Escobar* left intact existing Eleventh Circuit case-law finding a claim can be "false or fraudulent" without imposing the additional requirement of a representation about the goods or services provided. For example, in *McNutt v. Haleyville Medical Supplies, Inc.*, 423 F.3d 1256, 1259-60 (11th Cir. 2005), the Court held that the government alleged a valid claim based upon the defendant's violation of the Anti-Kickback Statute (*"AKS"*), 42 U.S.C. § 1320a-7b(b)(1) and (2), because compliance with the Statute was necessary for reimbursement under the Medicare program. *Id.* at 1260. *See also U.S. ex rel. Keeler v. Eisai, Inc.,* 568 Fed. Appx. 783, 799 (11th Cir. 2014); *United States v. Health Mgmt. Assocs.*, 591 F. App'x 693, 705 (11th Cir. 2014); *United States ex*

---

[2] CPT Code 77336. MSJ, p 9-12; US Statement of Facts (ECT 147)(*"SOF"*), ¶¶57-61 and ¶¶77-98.

[3] CPT codes 77261, 77300, 77280, 77332, 77334, 77336, or 77427. MSJ, p 9-12; SOF, ¶¶57-61, SOF, ¶¶77-98.

[4] (CPT Codes 77402, 77407 and 77412. MSJ, p. 4 8, 13, SOF, ¶¶16-25, 48-49, 99-102.

*rel. Freedman v. Suarez-Hoyos*, 781 F. Supp. 2d 1270, 1278-79 (M.D. Fla. 2011).[5] Moreover, since defendants failed to argue their claims were not "false or fraudulent" for this reason, either at the pleadings stage or in their opposition to the summary judgment motion, *see* Motions to Dismiss (ECF 50 and 51) and Responses to the MSJ (ECF 182 and 204), they should not be permitted to do so now.

In any event, even analyzed under the rubric of *Escobar*, the claims alleged here are precisely the sort of "half-truths" that gives rise to FCA liability. In particular, the claims at issue use the very sort of coding that *Escobar* found to constitute "specific representations about the goods or services provided." 136 S. Ct. at 2001. These claims bore CPT codes designated for radiation related services, office visits, biopsies and related services, and pathology procedures. MSJ at p. 3-4, 8-9, 12, 16-21; SOF 44. "[B]y submitting codes that corresponded to specific [medical] services, [the defendant] represented that it had provided [certain] treatment," "[a]nd these representations were clearly misleading, in context" because they "conveyed this information without disclosing [defendant's] many violations of [regulatory] requirements …." *Escobar*, 136 S. Ct. at 2000.

The misleading nature of defendants' claims is illustrated by their use of CPT codes in the 77xxx series for services related to high-energy radiation treatment. Anyone informed that defendants claimed to have provided such treatments would "probably--but wrongly--conclude" that (1) the high-energy radiation service was actually provided; (2) the service was provided with the necessary level of supervision from a licensed physician; and (3) the service was prescribed by a licensed physician based upon an exercise of professional judgment regarding the particular cancerous lesion afflicting that patient. Thus, the claims at issue here are, at a minimum, the very sort of "half-truths" *Escobar* concluded were "false or fraudulent" under the FCA.

### B. The Misrepresentations at Issue Are Material

*Escobar* reaffirmed that, under the FCA, "term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or

---

[5] In such circumstances, such a "specific representation: may exist, but the Eleventh Circuit recognized the validity of the theory without imposing such a requirement.

property." 136 S. Ct. at 2002; *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1228–29 (11th Cir. 2012) (citing *Neder*, 527 U.S. at 16). See <u>United States v. All Children's Health Sys., Inc.</u>, No. 8:11-CV-01687-T-27, 2013 WL 6054803, at *8 (M.D. Fla. Nov. 15, 2013) (same); <u>U.S. ex rel. Bibby v. Wells Fargo Bank, N.A.</u>, 906 F. Supp. 2d 1288, 1303 (N.D. Ga. 2012) (same). Here, the defendants' violations include claims that: (1) sought payment for services not provided, (2) sought payment for a more expensive procedure that was not provided, *i.e.*, "upcoded," (3) sought payment for services tainted by an improper inducement, (4) sought payment for services that were provided without adequate supervision, and (5) sought payment for services that were not documented. Each of these violations go to the core nature of the services the Government thought it was paying for and were therefore material.

No reasonable person would pay for services that were not rendered. Nor would a reasonable person pay an inflated price for a higher level of service than what was actually provided. *See Hill v. Morehouse Med. Associates, Inc.*, No. 02-14429, 2003 WL 22019936, at *1-2 (11th Cir. Aug. 15, 2003) (claims to Medicare using more expensive CPT billing codes when less expensive ones would have sufficed, altering diagnosis codes, using inappropriate and more expensive diagnosis codes, and billing visits unsupervised by physicians as if physicians were present, was sufficiently pleaded as a False Claims Act violation). Here, for instance, the reimbursement rate for the service defendants actually provided (CPT Code 77401) was between $19.51 and $26.03 per treatment while, for the same period, the reimbursement rates for the service the defendants falsely claim they provided (CPT Codes 77402, 77407, and 77412) were as high as $249.59. SOF 23. This nearly tenfold difference in reimbursement rates would be significant to any reasonable person and thus material.

Likewise, defendants' omission of information regarding their noncompliance with Federal statutes prohibiting the acceptance of kickbacks in connection with provision of medical services is also material. The AKS and the Stark Law both include language that establishes congressional intent that compliance therewith is material. The AKS makes it a felony to offer kickbacks or other payments in exchange for referring patients *"for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program."* 42 U.S.C. § 1320a–7b(b)(2)(A). Further, the AKS states that a claim that includes items or services resulting from its violation constitutes a false or fraudulent claim for purposes of … [the FCA].*"* 42 U.S.C. § 1320a-7b(g). The Stark Law expressly prohibits the presentation

6

or payment of claims for any services referred in violation of its provisions. 42 U.S.C. §§ 1395nn(a)(1), (g)(1). The undisputed and well-established laws, regulations, and guidance about the AKS and Stark Law, along with their label as a condition of payment, are very strong evidence of their materiality. Compliance with the AKS and the Stark Law go to the essence of the claims by ensuring that a patient receives a particular service because he or she needs it, and not because a doctor benefits financially for providing it. *McNutt*, 423 F.3d at 1259.

Lastly, here, the kickbacks were neither minor nor insignificant, and had a value of at least $1.3 million. MSJ, p. 18, SOF, ¶¶165. As was the case with representations for services not rendered and inflated billing codes, no reasonable person could conclude such significant kickbacks were not material to the government's payment decision. See *McNutt*, 423 F.3d at 1260 (Compliance with the AKS *"*is necessary for reimbursement under the Medicare program; and the [defendants] submitted claims for reimbursement knowing that they were ineligible for the payments demanded in those claims.*"*).

The fourth category of violations, Defendants' omission of information regarding noncompliance with critical Medicare requirements that require that services rendered to a Medicare beneficiary be directly and personally supervised by a physician who is in the office and immediately available is also material. SOF, ¶14 and App. C, ¶14 and Ex. C9 (ECF 148-6, p. 9). Given the self-evident danger and complexity of irradiating a human being to cure cancer, direct supervision by a doctor would be important to any reasonable person. The materiality of these requirements is further reinforced by related rules dictating that in the physician's absence no payment at all can be made, with the one exception being when specialized, highly trained personnel known as *non-physician practitioners* (NPPs) are in the office, but even then the reimbursement is cut to 85 percent of the physician fee schedule. *See U.S. v. R&F Properties of Lake County, Inc.,* 433 F.3d 1349, 1356 (11th Cir. 2005) (with respect to claims submitted without the required physician supervision, the Court notes that Medicare claims may be false if they claim reimbursement for services that are not reimbursable or not rendered as claimed); MSJ, p. 8-9.

Here, Marder did not just fail to supervise the radiation or other services on an occasional basis. The undisputed evidence established that he was only physically present in his satellite office once every two weeks even though radiation was administered every day. Even in his main office, he normally worked only on Monday and Wednesday, and also took off most of

July and December each year.  SOF, ¶¶39-43.  Indeed, on at least one occasion, Marder billed for radiation treatments he was ostensibly *"supervising"* when he was halfway across the world in Israel for an entire month (claiming to be receiving medical treatment for his own illness) with no other physician having ever stepped foot in his offices while he was gone.  SOF, 41  App. H, ¶19; App. I, ¶39 and Ex. I26.  Despite his extensive absences, every single claim that he ever billed was in his own name thereby representing that he was in the office.  SOF, ¶178.

The last category of violations, defendants failure to disclose their violation of Medicare regulations that require providers to maintain records containing sufficient information to determine whether payment is due and the amount to be paid, 42 USC 1395l(e); 42 USC 1395g(a); 42 CFR § 424.5(a)(6), is likewise material.  These directly impact the care provided to the patient, and a reasonable person would understand their importance.  For instance, such records would be necessary for a patient who has a recurrence of cancer near an area previously treated.  SOF 102-103.  Here, such a patient would be seriously disadvantaged because the documentation was not just deficient in an inconsequential manner, but absent in its entirety.  Indeed, the undisputed evidence was that no genuine documentation of the radiation prescription or other management services existed at all.  The only documents that did exist were faked and contradictory.  SOF, ¶¶77-98.  Thus, both a reasonable person, as well as the defendant, would find the violation of these Medicare regulations by the defendant to be material.

Finally, defendants cannot credibly claim they did not know each of these violations were material.  As an initial matter, Department of Health and Human Services has repeatedly advised health care providers for many years, both in formal and informal guidance as well as enforcement actions, of the centrality of the adhering to its regulations in general and the AKS and Stark Law in particular.  Any provider that participates in federal health care programs knows or should have known of the centrality of the AKS and the Stark Law.  Indeed, the defendants themselves had to acknowledge that fact when they signed multiple Medicare enrollment applications.  SOF 7-8.  Moreover, given the importance of each of these violations to the nature of the services the Government thought it was paying for, "a defendant's failure to appreciate the materiality of that condition would amount to 'deliberate ignorance' or 'reckless disregard' of the 'truth or falsity of the information' even if the Government did not spell this out."  *Escobar*, 136 S. Ct. at 2002 (quotation marks in original).

## IV.     Conclusion

For the foregoing reasons, plaintiff respectfully submits that the Supreme Court's decision in *Escobar* reaffirms that the Court should grant plaintiff's motion for summary judgement.

Dated: July 23, 2016                                                Respectfully submitted,

                                                                                    WILFREDO A. FERRER
                                                                                    UNITED STATES ATTORNEY
                                                                                    500 S. Australian Ave, Suite 400
                                                                                    West Palm Beach, FL 33401
                                                                                    Telephone: (561) 209-1043
                                                                                    Facsimile: (561) 805-98461


                                                                                       s/ Mark Lavine
                                                                                    Mark A. Lavine
                                                                                    Florida Bar No. 648876
                                                                                    Mark.Lavine@usdoj.gov

## **CERTIFICATE OF SERVICE**

       I hereby certify that on July 23, 2016, I electronically filed the foregoing with the Clerk of Court, using CM/ECF. I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

                                                                /s Mark Lavine
                                                                 Mark Lavine