**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 13-24503-CIV-MOORE/MCALILEY

UNITED STATES OF AMERICA and the
STATE OF FLORIDA, *ex rel.*
THEODORE A. SCHIFF, M.D.,

      Plaintiffs,

vs.

GARY L. MARDER, D.O.; ALLERGY,
DERMATOLOGY & SKIN CANCER
CENTER, INC., a Florida corporation,
ROBERT I. KENDALL, M.D., and
KENDALL MEDICAL LABORATORY,
INC.*,* a Florida corporation

      Defendants.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF RELATOR'S**
**VERIFIED MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES**

## I. INTRODUCTION

The Federal False Claims Act ("FCA") and its State of Florida analog include mandatory fee-shifting provisions, directing that the Plaintiff-Relator shall be fully compensated for all reasonable attorneys' fees, costs and expenses in an FCA case which settles. *See, e.g.,* 31 U.S.C. §3730(d)(1). Relator and the law firms of Klitzman Law Group, PLLC (the "Klitzman Firm") and Berger & Montague, P.C. (the "Berger Firm") (collectively, "Relator's Counsel") submit this memorandum in support of an award of attorneys' fees, costs and expenses – jointly and severally with Robert I. Kendall, M.D. ("Kendall"), and Kendall Medical Laboratory, Inc.*,* a Florida corporation ("KML," together with Kendall, the "Kendall Defendants") – against Gary L. Marder, D.O. ("Marder"); Allergy, Dermatology & Skin Cancer Center, Inc., a Florida Corporation ("ADSCC" together with Marder, the "Marder Defendants.").

1

Alongside the government, Relator's Counsel litigated this FCA case against Defendants for over three years before achieving a successful settlement whereby judgment has been entered in favor of the United States and against the Marder Defendants for $18,017,382.00.  The judgment amount will skyrocket to $41,023,883.47, on February 24, 2017 unless the Marder Defendants make a cash payment of $5.2 million and convey certain real property with an assessed value of $648,000.00 on or before such date.

To place in perspective the value achieved by bringing a halt to the illegal practices of the Defendants in this case, it should be noted that from January 2008 through September 2014,[1] the Marder Defendants billed Medicare $69,069,225 and were paid $15,844,528.[2]   By comparison, the total amount being sought by Relator's Counsel for attorney's fees, costs and expenses under 31 U.S.C. §3730(d)(1) and its Florida analog ("collectively "Relator's Fees") represents less than *3%* of the judgment amount, less than *1.5%* of the potential amended judgment amount, and assuming a payment is made by the Marder Defendants on or before February 24, 2017, as described above, less than *10%* of the payment amount.

This case was fiercely litigated and involved nearly 50 separate motions and more than 275 docket entries.  Relator's Counsel worked hand in hand with the Assistant United States Attorneys who prosecuted the case, and provided continuing assistance and support on virtually every filing made on behalf of the United States.  Relator Counsels' participation included attendance at preparation and strategy sessions with the United States prior to depositions, meeting with and preparing expert witnesses, regular contributions to the drafting of virtually

---

[1] Marder continued to bill numerous claims, many false, after the complaint was served on him in December 2014 resulting in additional paid claims in excess of $1.2 million just through March 2015 and continuing thereafter.

[2] All of the false claims at issue in this case were billed by and paid to Marder.

every material filing, and providing research and guidance on health care regulatory and related issues such as compliance requirements and permitted safe-harbors under the Anti-Kickback Act and Stark Law, physician supervision requirements for radiation treatments, physician assistant billing procedures, physician record documentation requirements, billing for pathology services, guidance and analysis concerning the use of nearly twenty (20) code of procedural terminology ("CPT Codes") billing codes at issue in this case, and issues concerning a particular form of radiation known as hyperfractionation.

In prosecuting the litigation against Defendants, Relators' Counsel have incurred a total lodestar, as captured through daily time reporting and made a part of Counsel's books and records, of $530,959.85.  *See,* Declarations of Lawrence Klitzman ("*Klitzman Declaration*", attached as Exhibit 1 to Relator's Verified Motion To Determine The Amount Of Defendants Attorney's Fees, Costs, And Expenses Payable Under 31 U.S.C. §3730(D) and Florida Statutes §68.085( C) (the "Motion") (showing the Klitzman Firm's total lodestar of $384,184.35, adjusted to $374,274.35 through February 8, 2017), and Daniel R. Miller ("*Miller Declaration*", attached to the Motion as Exhibit 2) (showing the Berger firm's total lodestar of $146,775.50 adjusted to $135,065.50 through February 9, 2016).  For purposes of the present request, Counsel exercised reasonable billing judgment and made appropriate cuts to this request for fees which are discussed more fully below.   Finally, it should be noted that the Marder Defendants cannot argue that they are not jointly and severally liable with the Kendall Defendants for fees and costs; the Consent Judgment entered against the Marder Defendants on February 6, 2017 specifically states that the Marder Defendants are jointly and severally liable for Relator's attorneys' fees, costs, and expense.  ECF No. 277, at ¶7.

## II. ARGUMENT

### A. The False Claims Act Requires The Court Award Relators Their Reasonable Attorneys' Fees, Costs, and Expenses Incurred Pursuing This Action

Under the FCA's mandatory fee-shifting provisions, Relator is entitled to all reasonable attorneys' fees, costs and expenses. 31 U.S.C. §3730(d)(1) and (d)(2) ("All such expenses, fees, and costs shall be awarded against the defendant."); *see also* Fla. Stat. §68.085(c).

Relator retained counsel in this matter by entering into a contingent-fee arrangement, whereby he retained counsel for the prosecution of the *qui tam* suit with the understanding that counsel would be paid both a portion of any Relator's share in the event of a successful outcome, and attorney' fees awarded by the court or obtained in settlement. Such agreements are the norm in *qui tam* cases.

### B. The Attorney Hours Requested Are Reasonable

Under the FCA, the reasonableness of a fee is determined by first using a lodestar calculation. *See United States ex rel. Jacobs v. Patrol Servs.*, 202 Fed. Appx. 357, 359 (11th Cir. 2006). "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The result of this calculation is presumed to be reasonable. *See Untied Auto. Workers 259 v. Metro Auto Ctr.*, 501 F.3d 283,290 (3d Cir. 2007) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This method "produce[s] an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 552 (2010).

The Klitzman and Berger Firms are also entitled to be compensated for the time spent seeking an award of fees, e.g., the time spent preparing the instant motion. *Norman* v. *Housing*

4

*Authority of Montgomery*, 836 F.2d 1292, 1305 (11th Cir. 1988) ("To paraphrase the acute observation of baseball great Yogi Berra, a case ain't over till it's over. This means that . . . counsel are entitled to compensation until all benefits obtained by the litigation are in hand. Hence, hours reasonably expended on post-decree administration are compensable"). This "fees on fees" approach has been commonly applied in the FCA context. *United States ex rel. Doe v. Pennsylvania Blue Shield, Xact Medicare Serv.*, 54 F. Supp. 2d 410, 414 (M.D. Pa. 1999); *United States ex rel. Doe v. Biotronik, Inc.*, No. 2:09-cv-3617-KJM- EFB, 2015 U.S. Dist. LEXIS 144447 at *38 (E.D. Cal. Oct. 22, 2015); and *United States ex rel. ATC Distrib. Group, Inc. v. Ready-Built Transmissions, Inc.*, No. 03 Civ. 2150 (GWG), 2007 U.S. Dist. LEXIS 65963 at *17-18 (S.D.N.Y. Sept. 7, 2007).

Using the adjusted lodestar calculation, the Relator's attorneys' fees total $509,339.85. Attached to the *Klitzman Declaration* as Exhibit 2 and the *Miller Declaration* as Exhibit 1 are detailed time-keeping reports for this matter identifying the time keeper, time spent, and a description of the work performed. Each of these declarations provides a detailed explanation regarding why the hours expended in this matter are reasonable in light of the complexity of the case. For example, the Klitzman Declaration states, *inter alia*,

> 15. [I]t should be noted that this was a contingent fee case, i.e., Counsel were incentivized to only perform work which was necessary to advance the case. There certainly was no incentive to "overbill" the case.
>
> 16. Counsel's work on this case began four years ago, in February, 2013, nearly a full year before the filing of the original complaint in December 13, 2013, and continues through the instant motion. During the pre-compliant filing period, the Klitzman Firm was actively involved gathering and evaluating patient information, interviewing prospective witnesses, doing extensive legal research on the healthcare regulatory, coding, billing and other issues involved in this case, and working closely with the investigation team.
>
> 17. Due to the specialty nature of False Claims Act proceedings, and the costs and risks associated with undertaking a litigation of this nature, the Klitzman Firm decided it would be beneficial to co-counsel the case with a

seasoned False Claims Act law firm. After conferring with several potential co-counsel candidates, the Klitzman Firm decided to co-counsel with Daniel Miller of the Berger Firm. While the Klitzman Firm did most of the heavy lifting, attendance at all local proceedings, including frequent meetings with counsel for the United States, the Berger Firm otherwise participated in every aspect of these proceedings and was an invaluable resource.

* * *

20. This was a complex case that required close coordination between the Klitzman Firm and the Berger Firm. There are many time entries referencing conference calls, emails or meetings among Counsel. Further, this matter required the assistance and coordination of a number of different attorneys at the Klitzman and Berger Firms. There were no directions for how to proceed in pursuing this rather unusual case. This necessitated Counsel conferring frequently in order to develop, strategize and plan.

*Klitzman Declaration,* ¶15-17 and 20.

### C.     The Hourly Rates Sought By Relator's Counsel are Reasonable

To meet the burden of proving a reasonable hourly rate, the moving party must produce "satisfactory evidence" that the hourly rate being requested is in line with "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *See Norman v. Housing Auth. of the City Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The hourly rate for Mr. Klitzman of $435.00 is reasonable for the Ft. Lauderdale/Miami market and in light of his experience. Mr. Klitzman has been the principal of the Klitzman Firm for more than 30 years. He has significant experience handling complex commercial litigation matters which have resulted in multi-million dollar judgments and recoveries against financial institutions and Fortune 500 Companies. Mr. Klitzman is also serving as relator's counsel in other pending health care fraud FCA cases throughout the country. See, *Klitzman Declaration* ¶2. In addition to his litigation practice, Mr. Klitzman has a transactional practice in which he represents physicians practices with as many as 300 employees on matters concerning health care regulatory compliance including compliance with the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (the "AKS"), and Stark Law, 42 U.S.C. § 1395nn which were prominent issues in

6

this case. *Id., See, also, Blue Water Marine Servs. v. M/Y Natalita, III,* 2010 U.S. Dist. LEXIS 30242, at *12–15, 2010 WL 1330265 (S.D.Fla. Feb. 2, 2010) (finding $425 hourly rate reasonable for an experienced partner); *MKT Reps S.A. De C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.,* No. 10-22963-CIV, 2013 WL 1289261, at *9 (S.D. Fla. Mar. 28, 2013) (finding an hourly rate of $500 for Greenburg Traurig partner practicing in the South Florida market was appropriate and reasonable); *Global Horizons Inc. v. Del Monte Fresh Produce N.A., Inc*., 2009 WL 855970 (S.D.Fla. Mar. 31, 2009) (awarding discounted hourly rates for premium South Florida law firm of $300–475 per hour (partners); $185–310 (associates); and $160 (paralegals)). The rates of the remaining attorneys are also in line with the South Florida legal market as they range from $195-$285 for associate attorneys in complex litigation. *CBS Broadcasting, Inc. v. Browning*, 2007 U.S. Dist. LEXIS 75097, 2007 WL 2850527 (S.D.Fla. Sept. 21, 2007) (holding reasonable seventh-year associate hourly rate at $375, fourth-year associate hourly rates at $325–350 and second-year associate at $175).

Daniel R. Miller is a shareholder at Berger & Montague, PC, one of the most successful plaintiff's firms in the country (the firm has recovered more than $30 billion in verdicts and settlements). Prior to joining the firm, Mr. Miller prosecuted FCA actions during his 17-year career as a Deputy Attorney General in the Delaware Department of Justice, where he played a significant role in cases which returned more than $2.5 billion to state and federal treasuries. After serving as the President of the National Association of Medicaid Fraud Control Units, Mr. Miller entered private practice where he exclusively represents whistleblowers in complex fraud cases in jurisdictions throughout the United States. Given his extensive experience in complex federal court litigation under the FCA and his broad trial experience (having tried more than 125 cases to jury verdict) Mr. Miller's hourly billing rate is $710. This rate is reasonable not only in his home

7

market of Philadelphia, Pennsylvania, but is also reasonable in the South Florida legal market for an attorney of his education, background, and experience in complex litigation. *See Lehman Bros. Holdings v. Key Fin. Corp.*, No. 8:09-CV-623- T-17EAJ, 2011 U.S. Dist. LEXIS 99346 at *10 (M.D. Fla. Aug. 12, 2011) (report and recommendation) (finding $639 hourly rate reasonable for New York attorney in light of his experience); *Richards v. Financial Services Authority*, 2010 WL 8411419 (M.D. Fla. 2010) (awarding blended hourly rates of $626.00 for partners and $308.00 for associates of a Miami law office). The rates for partners Shauna Itri and Joy Clairmont, $600 and $615 respectively, are similarly reasonable. *Id*. The rates of the remaining attorneys are also reasonable as they range from $385-$470 for associate attorneys in complex litigation. *Browning*, 2007 U.S. Dist. LEXIS 75097 (holding reasonable seventh-year associate hourly rate at $375, fourth-year associate hourly rates at $325–350).

Courts have also relied on surveys of defense firms' hourly rates when analyzing plaintiffs' fee petitions. *See, e.g., Review Publications, Inc. v. Navarro*, No. 89-1187-CIV-KEHOE, 1991 WL 252962, at *3 (S.D. Fla. June 26, 1991). Indeed, the Local Rule applicable to this case, L.R. 7.3(a), specifically requires defense counsel to disclose their hourly rates if they contest Relator's petition. In terms of defense counsel's billing rates, Ryan K. Stumphauzer ("Stumphauzer"), counsel for the Marder Defendants, appeared before this Court in 2015 on behalf of a relator. In *United States et. al. v. Plaza Health Network, et. al.* [U.S.D.C. So. Dist. Miami Case 1:12-cv-20951-FAM ("Plaza Health"), Mr. Stumphauzer was awarded Relator's attorney's fees based upon his then-hourly rate of $625 per hour. *Plaza Health* ECF 82 at 10.

Though he has not officially appeared in this case, the Marder Defendants' principal lawyer for purposes of negotiations conducted with Relator's counsel has been Kirk Ogrosky. The fact that Mr. Ogrosky is a partner in the Washington D.C. office of national powerhouse Arnold &

8

Porter, and the fact that he is a former high ranking member of the United States Department of Justice, provide a solid grounding for Relator's Counsel's assertion that this case required high level legal talent. Relatedly, a National Law Journal survey of *Billing Rates Across the Country*, dated January 13, 2014,[3] (more than three years ago), reported that Arnold & Porter partners billed between $670-$950 per hour, with an average of $815. Associates at Arnold & Porter billed between $345-$610 per hour, with an average of $500.

In this case, the "Kendall Defendants" were represented by Greenberg Traurig. According to the same 2014 survey by the National Law Journal, Greenburg Traurig partners (three years ago) charged within the range of $360-$955 per hour for legal services (with an average of $655), and associates bill between $200-$595 (with an average of $390).

These rates are similar to the rates charged by other major law firms in the Philadelphia area where the Berger firm is headquartered. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 180561, *22-25 (E.D. Pa. Oct. 19, 2012) (taking judicial notice to a 2011 sampling of nationwide billing rates submitted by the Plaintiff's counsel listing partners at Philadelphia-based firm Pepper Hamilton bill up to $825 per hour, "and partners at other Philadelphia law firms have similar top hourly rates ($900 at Cozen O'Connor, $875 at Duane Morris, $750 at Saul Ewing, and $725 at Fox Rothschild)").

To further buttress the fact that counsel's fees are reasonable, Relator's Counsel consulted an expert FCA practitioner, Jonathan Kroner ("Kroner"), for his opinion. *See*, declaration of Jonathan Kroner ("*Kroner Declaration*") attached to the Motion as Exhibit 3. Mr.

---

[3]Found at http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country?slreturn=20150811091145.

Kroner's primary practice involves the pursuit of federal FCA claims in the Southern District of Florida. Mr. Kroner has been the managing partner of the Jonathan Kroner Law Office since 1990. He was admitted to the Federal Bar (Southern District Florida) and the Florida Bar in 1981. Mr. Kroner holds professional degrees from the University of Miami (J.D. 1981), Emory University (M.B.A. 1978), and New College of Florida (B.A. 1976). He is AV rated by Martindale-Hubbell and has a reputation with lawyers in this district and others for proficiency with the FCA. For 17 years, the principal part of his practice has been Federal False Claims act litigation. He has published FCA-related articles in the American Bar Association, Litigation Section, and the False Claims Act & *Qui Tam* Quarterly Review. He is very familiar with FCA litigation, and with the work required in intervened cases. See, *Kroner Declaration.* ¶3-4 (citing cases in which Kroner served as relator counsel).

Mr. Kroner reviewed the salient portions of the docket and related filings, the description of the qualifications and experience of the time-keepers, and concluded as follows:

> I am very familiar with the federal court legal market in the Southern District of Florida, including the market as it relates to complex *qui tam* litigation (such as the instant case). It is my opinion that the hourly rates listed above are equal to, and in many cases less, than the market value of the legal services provided in this matter.

*See, Kroner Declaration* ¶18.

### D. Counsel Exercised Billing Judgment

Consistent with the Supreme Court's instruction that prevailing parties should "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," *Hensley*, 461 U.S. at 434, Relator's Counsel applied billing judgment with regard to the instant request, and have documented the same for the Court's review. *See, Klitzman Declaration* ¶21-22 and Exhibit 3, and *Miller Declaration* ¶17-18 and Exhibit 1. For example, Relator removed entries which specifically involved pursuit of defendants other than the

defendants who settled the action. Through this exercise of billing judgment, Relator excised $21,620.00 from the request. *Id.* Accordingly, Relator requests that the Court award Relator $374,274.35 in legal fees for work performed by the Klitzman Firm, and $135,065.50 in legal fees for work performed by the Berger Firm. The amounts requested are summarized in the chart below:[4]

| Time Keeper | Position | Hourly Rate | Original Quantity Billed | Adjusted Quantity Billed | Fee Sought |
|---|---|---|---|---|---|
| Lawrence Klitzman | Partner | $435.00 | $277,416.90 | $7,630.00 | $269,786.90 |
| Ashley L. Fernald | Associate | $285.00 | $9,288.15 | $665.00 | $8,623.15 |
| Misbah Farid | Associate | $265.00 | $1,640.35 | | $1,640.35 |
| Zac Conjeski | Associate | $285.00 | $39,731.15 | $1,615.00 | $38,116.85 |
| Javier Chipi | Associate | $265.00 | $643.95 | | $643.95 |
| Geoffrey Langbert | Associate | $195.00 | $4,315.35 | | $4,315.35 |
| Linda Fresneda | Law Clerk | $195.00 | $51,148.50 | | $51,148.50 |
| Daniel Miller | Partner | $710.00 | $113,600.00 | $6,390.00 | $107,210.00 |
| Shauna Itri | Partner | $600.00 | $15,960.00 | | $15,960.00 |
| Joy P. Clairmont | Partner | $615.00 | $615.00 | | $615.00 |
| Russell Paul | Partner | $665.00 | $5,320.00 | $5,320.00 | $0.00 |
| Yael R. May | Associate | $470.00 | $6,345.00 | | $3,048.50 |
| Benjamin Waters | Associate | $405.00 | $3,807.00 | | $3,807.00 |
| Johnathan Desantis | Associate | $385.00 | $885.50 | | $885.50 |
| Bill Mecoli | Paralegal | $275.00 | $302.50 | | $302.50 |

---

[4] Copies of Klitzman Firms's line-by-line fees are attached to the *Klitzman Declaration* as Exhibit 1. Copies of Berger Firm's line-by-line fees are attached to the *Miller Declaration* as Exhibit 1.

| David Filbert | Paralegal | $330.00 | $2,937.00 | | $2,937.00 |
|---|---|---|---|---|---|
| **TOTAL** | | | **$530,959.85** | **$21,620.00** | **$509,339.85** |

### E. The Expenses And Costs Sought Are Reasonable

In addition to reasonable attorneys' fees, Counsel are entitled to recover costs and expenses from Defendants pursuant to Section 3730(d) and its Florida FCA analog. Unlike costs that are specifically enumerated in 28 U.S.C. § 1920, the term "expenses" "include[s] all of the expenditures made by a litigant in connection with the action." *See Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1098 (5th Cir. 1982) (explaining difference in antitrust context). Reasonable expenses compensable under the FCA have been held to include those reasonable expenses incurred which are "normally charged to a fee-paying client, in the course of providing legal services." *See Planned Parenthood v. AG*, 297 F.3d 253, 267 (3d Cir. 2002)(citation omitted); *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 30 (D.C. Cir. 1984); *see also Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 16-17 (D.D.C. 2000).

Types of necessarily incurred costs and expenses recoverable under 31 U.S.C. § 3730(d)(2) include, but are not limited to, expert witness fees, attorney travel costs, and costs of creating demonstrative exhibits for trial. *See United States ex rel. v. Garibaldi v. Orleans parish Sch. Bd.*, 46 F. Supp. 2d 546, 567 (E.D. La. 1999). The expenses requested by the Relator are itemized in an attachments to the *Klitzman Declaration* at Exhibit 4 and the *Miller Declaration* at Exhibit 1, and were reasonably incurred during an over four (4) year period of investigation and litigation.

In sum, Relator seeks the following expenses:

| Category of Expense | Amount Sought |
|---|---|
| Investigator – James Goldman & Associates | $79,785.99 |
| Filing Fees | $800.00 |
| Courier Fees | $186.50 |
| Electronic Document Retrieval | $454.80 |
| Copying and Document Storage | $1105.17 |

| Mediation Costs | $850.00 |
| --- | --- |
| Attorney Travel and Travel Incidentals | $2,286.74 |
| Telephone Costs | $28.67 |
| Reproduction Costs | $121.48 |
| Electronic Storage costs | $9.24 |
| Computer Research Costs | $334.80 |
| Delivery Costs | $179.04 |
| DVD Reproduction Costs | $200.00 |
| Postage | $36.14 |
| Parking | $20.00 |
| Process Server | $774.50 |
| Title Search | $150.00 |
| Safe Deposit Box Fee | $130.00 |
| Miscellaneous Expenses | $890.75 |
| (Credit for Berger Firm Reimbursement to Klitzman Firm) | ($740.75) |
| **TOTAL** | **$87,603.07** |

Most of the costs advanced in this case relate to investigation fees paid to James D. Goldman & Associates ("Goldman") (See, *Klitzman Declaration* ¶12 and Exhibit 5). Such expenses have been permitted as recoverable non-taxable costs pursuant to similar federal fee-shifting statutes. *See, e.g., Trotter v. Columbia Sussex Corp,* No. 08-0412-WS-M, 2010 U.S. Dist. LEXIS 7625 at *35-38 (S.D. Ala. Jan, 29, 2010), citing *Dowdell v. City of Opaka* 698 F. 2d 1181, 1192 (11th Circ. 1983), accord *Barnes* 168 F3d 438-9. Goldman was hired to monitor 24/7 access to the Port St. Lucie office ("PSL Office") of the Marder Defendants for a period of approximately three (3) months. Goldman's investigation confirmed what the Relator understood from witnesses previously interviewed by the Relator; that Marder's physical hours in his PSL Office were limited to Monday and Wednesday from approximately 10 a.m. until 4:00 p.m. *See, United States Statement of Fact in Support of its Motion for Summary Judgment* ("*SOF*") [ECF 147] at ¶39. This was a crucial fact which supported the most significant theories underlying the facts of this case. Marder was physically present even less hours at his Okeechobee Office, only one morning every other week. *SOF* at ¶40. However Medicare regulations require direct physician supervision of physician assistants while they are administering radiation treatments. See, *Summary Judgment;*

13

ECF 255 at 22. If Marder was not in the office he could not supervise his physician assistants. If he was not supervising his physician assistants, he could not bill Medicare for the treatments. Thus, the investigative expenses directly led to evidence supporting the allegations in the complaint, which were later corroborated by the government. For example, on days he was not in the office, Marder billed Medicare for services billed under CPT codes in the 77xxx series for radiation related services in the amount of $5,746,399. See, SOF ¶44.

Goldman's confirmation of Marder's activities (or lack thereof) supported two other significant theories of this case. First, under Medicare regulations, Marder was required to bill covered services rendered by physician assistants which were not incident to services rendered by Marder, at 85% of the physician billing rate. ECF 255 at 23. As it turns out, Marder billed none of the services rendered by physician assistants at the lower 85% rate. Accordingly, all services performed by physician assistants which were billed under Marder's National Provider Identification Number at the 100% rate were false claims. Second, to engage in global billing, both the technical and professional components of the pathology services must be administered in the same location. The investigator's work confirmed that neither Marder nor Defendant Kendall returned to the office at night or on the weekend to read the slides, thus establishing that global billing engaged in by the Marder Defendants was illegal. For the period from 2008 through 2014, the Marder Defendants were paid $2,829,231.11 by Medicare for pathology services prepared by Kendall yet illegally billed globally by Marder. *See, SOF* ¶145. Of this amount, $1,267,858.00 was for 3925 pathology services billed when Marder was not even in the office Id. ¶44.

### III.     Credit For Fees Paid By The Kendall Defendants

The Kendall Defendants have agreed to pay a portion of the fees sought hereunder. On February 6, 2017, Relator entered a settlement agreement with the Kendall Defendants (the

"Kendall Settlement") whereby Relator agreed to accept payment of $75,000 from the Kendall Defendants for Relator's Fees. Relator will credit the amount of any such payment made by the Kendall Defendants against the amount sought to be paid by the Marder Defendants hereunder.

## IV.  CONCLUSION

Counsel respectfully requests that the Court enter the attached Proposed Order awarding them attorneys' fees in the amount of $509,339.85 and costs and expenses in the amount of 87,603.07, for a grand total of $596,942.92, plus fees and costs incurred subsequent to February 8, 2017 for the Klitzman Firm and February 9, 2017 for the Berger Firm, subject to a credit to the extent of any payment received by the Kendall Defendants.

Dated February 14, 2017            Respectfully submitted,

KLITZMAN LAW GROUP, PLLC
Lawrence S. Klitzman, Esquire
(Florida Bar No. 312878)
1391 Sawgrass Corporate Parkway
Sunrise, Florida 33323
Tel: (954)-384-4421
Fax: (954)-389-3579

BERGER & MONTAGUE, P.C.
Daniel R. Miller, Esquire
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel:  (215)-875-3000
Fax: (215)-875-5807
*Attorneys for the Relator*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2017 I electronically filed the foregoing with the Clerk of Court, using CM/ECF.  I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF, or via other means if required.

/s Lawrence S. Klitzman
Lawrence S. Klitzman